WILLIAM E. HANNA, Appellant, v. EMORY A. STEDMAN, as President of the EXPRESSMAN'S MUTUAL BENEFIT ASSOCIATION, Respondent.

Judgment — comity — power of courts of one state to render judgment binding upon those of another — jurisdiction of parties and subject-matter primary requisites — action of interpleader not in rem — jurisdiction not obtained over non-resident by service by publication — foreign court, in action by non-resident, may determine that court of this state had no jurisdiction, and proceed to judgment — action in this state to recover upon such judgment — when not barred by Statute of Limitations.

1. The fundamental limitation upon the power of the courts of one state to render a judgment binding upon those of another state is that the former shall have jurisdiction of the parties and of the subject-matter upon which they have pronounced an adjudication, and, it is a necessary corollary to this, that the courts of the state in which the judgment is pressed as a controlling adjudication shall have the right to investigate and ascertain whether the court rendering the judgment did have such jurisdiction.

2. Actions or proceedings *in rem* have for their subject specific property which is within the jurisdiction and control of the court to which application for relief is made and do not include an action of interpleader wherein the plaintiff sought and obtained a judgment determining to which one of several conflicting claimants it should pay moneys conceded by it to be due upon a personal claim to some one.

3. In such an action service of the summons by publication upon a non-resident defendant does not give a court of this state jurisdiction to render a judgment binding upon such defendant, and a court of the state where such defendant resides may properly hold, in a subsequent action brought by her therein, that the New York court was without jurisdiction to render such judgment.

4. The fact that the court in this state had decided that the action pending before it was one *in rem*, which permitted jurisdiction of the non-resident party to be obtained by publication, is not a binding adjudication upon the foreign court, since a court even of general powers cannot acquire jurisdiction merely by asserting it or determining that it exists when no view of the facts sustains such conclusion.

5. On examination of the statutes of the foreign state, *held*, that the contention that even though the foreign judgment was effective and binding, the right to enforce it had been lost by operation of the Statute of Limitations of the foreign state cannot be sustained.

*Hanna* v. *Stedman*, 185 App. Div. 491, reversed.

(Argued December 2, 1920; decided March 1, 1921.)

APPEAL, by permission, from an unanimous judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 7, 1919, in favor of defendant upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

*Herman S. Hertwig* and *Richard S. Culbreth* for appellant. Under the full faith and credit clause of the Federal Constitution, the Maryland judgment is conclusive between the parties on the merits of the action, and is not open to the defendant to re-litigate in this action the question of the validity of the New York judgment. (*State of Maryland* v. *Brown*, 64 Md. 199; *Hills* v. *McConnell*, 106 Md. 574; *Mister* v. *Thomas*, 122 Md. 445; *Fauntleroy* v. *Lum*, 210 U. S. 230; *Hanley* v. *Donohue*, 116 U. S. 1; *M'Elmoyle* v. *Cohen*, 13 Pet. 312; *Cheever* v. *Wilson*, 9 Wall. 108; *Kenny* v. *Superior Lodge*, 252 U. S. 411; *Cooper* v. *Reynolds*, 10 Wall. 308; *United States* v. *N. Y. O. S. S. Co.*, 216 Fed. Rep. 61.) The Chemung county judgment was never a valid judgment. (*Cole* v. *Cunningham*, 133 U. S. 107; *N. Y. Life Ins. Co.* v. *Dunleavy*, 241 U. S. 518; *Cross* v. *Armstrong*, 44 Ohio St. 613; *Lowry* v. *Downing Ins. Co.*, 73 Fla. 535; *Federal Life Ins. Co.* v. *Looney*, 180 Ill. App. 488; *Coe* v. *Garvey*,

130 Ill. App. 221; *W. L. Ins. Co.* v. *Gooding*, 19 Tex.
Civ. App. 490; *Gary* v. *N. M. A. Assn.*, 87 Ia. 75;
*Patorni* v. *Campbell*, 12 M. & W. 277; *Harris* v. *Bank
of British N. A.*, 19 Ont. Pr. 51; *Walsh* v. *Rhall*, 6 Kulp
[Penn.], 483.)   The action is not barred by the Statute
of Limitations.   (*Isenberg* v. *Ranier*, 145 App. Div. 256;
*Hulbert* v. *Clark*, 128 N. Y. 295; *Campbell* v. *Holt*, 115
U. S. 620; *Chambers* v. *B. & O.*, 207 U. S. 142; *Cole* v.
*Cunningham*, 133 U. S. 107; *Ward* v. *Maryland*, 12 Wall.
418; *Chemung* v. *Carter*, 93 U. S. 72; *Weyand* v. *Park
Terrace Co.*, 202 N. Y. 231; *Travis* v. *Y. & T. Mfg. Co.*,
252 U. S. 60; *Blake* v. *McClung*, 172 U. S. 239.)

*Miles M. Dawson* for respondent.   This action is
barred by the prior judgment of the Supreme Court of
the state of New York of the same issue between the
same parties, which is conclusive of the matter, and the
Maryland court was without jurisdiction to pronounce
the judgment here sued on.   (*Doty* v. *Brown*, 4 N. Y. 71;
*Cole* v. *Cunningham*, 133 U. S. 107; *Embury* v. *Connor*,
3 N. Y. 511; *White* v. *Coatsworth*, 6 N. Y. 137; *Moore* v.
*City of Albany*, 98 N. Y. 396; *Ward* v. *Boyce*, 152 N. Y.
191; *Smith* v. *Smith*, 79 N. Y. 634; *Leavitt* v. *Wolcott*,
95 N. Y. 212; *Stokes* v. *Foote*, 172 N. Y. 327; *Thorn* v.
*De Breteuil*, 179 N. Y. 64.)   This action cannot be brought
because the time limited for bringing the same has
expired.   (*Klotz* v. *Angle*, 220 N. Y. 347; *People ex rel.
Angerstein* v. *Kenney*, 96 N. Y. 295; *Diamond Glue Co.* v.
*U. S. Glue Co.*, 187 U. S. 611; *Wilson* v. *Iseminger*,
185 U. S. 55; *Koshkonong* v. *Burton*, 104 U. S. 668;
*Terry* v. *Anderson*, 95 U. S. 628; *Hulbert* v. *Clark*, 128
N. Y. 298; *Halsted* v. *Silberstein*, 196 N. Y. 1; *Wheeler* v.
*Jackson*, 41 Hun, 410;  105 N. Y. 681; *Chapman* v.
*Barney*, 129 U. S. 677.)

HISCOCK, Ch. J.   This appeal requires us to determine,
*first*, which of two conflicting judgments rendered

respectively by courts of the states of New York and Maryland was the superior and controlling adjudication upon rights here involved, and, *secondly,* if we should decide that the Maryland judgment was originally the controlling one, whether the right to enforce that judgment in this state has become barred by the Statute of Limitations.

"The defendant is a voluntary, unincorporated fraternal beneficiary association which during all the times in question has maintained its principal office in the state of New York. It issued two membership certificates to one Ehrman under each of which it became bound upon his death to pay the sum of $1,000 to such person, if any, as he might have designated as beneficiary under the rules and regulations of the association. He duly designated his wife, but when she predeceased him he failed to designate another one as he might have done and the result was that he soon died leaving no designation of a beneficiary other than that of his deceased wife.

"At the dates of their respective deaths both Ehrman and his wife were residents of the state of Maryland and thereafter by the courts of that state letters testamentary and of administration upon their respective estates were issued to persons who also were residents of the state.

"By assessments duly levied upon its members the defendant collected the moneys with which to pay the amount due on and under its aforesaid certificates. The moneys thus collected were not kept in a fund by themselves but were deposited in the general account of the defendant which was known as the " beneficiary fund." Conflicting claims to the moneys payable under the certificates were made by the representatives of the estates of Ehrman and his wife and by various other people, including a son, and all of which claimants save the son were non-residents of the state of New York.

"The defendant as plaintiff filed in equity in the state of New York a bill of interpleader in which all of the claimants were named as parties and wherein judgment was

demanded that the conflicting claimants be required to interplead concerning their claims, which were set forth; that some person be authorized to receive the moneys pending the litigation and that upon delivery of the same to such person the plaintiff be discharged from all liability. The complaint was the ordinary one in which a debtor subjected to conflicting claims and uncertain which is the superior one seeks to compel the contestants to litigate their rights and prays that he be relieved on payment of his debt to the successful one. As a matter of fact the moneys due from the association were never brought into court pending the litigation. Service of the summons was made upon the representative of Mrs. Ehrman's estate, to whose rights the present plaintiff has succeeded, by publication without the state, but she never appeared in the action. Judgment was finally rendered that the son of the member was entitled to the moneys payable under the certificates and upon his consent it was directed that the same be paid to the representatives of Ehrman's estate, which was done.

After the foregoing action had been commenced, but before the attempted service of the summons therein upon her had been completed, the representative of Mrs. Ehrman's estate commenced an action in Maryland to recover from the association the moneys due under the said certificates. At this time the defendant had a division superintendent whose jurisdiction extended over various states including the state of Maryland and who had an office in that state. Personal service of the summons in the latter action was made through him upon the defendant, which duly appeared in said action and defended against the claim therein being made. By supplemental answer it set up the rendition of the judgment in the first or New York action. The Maryland court, however, decided that that court did not have jurisdiction to render a judgment binding upon the plaintiff in the Maryland action and rendered judgment

in favor of such plaintiff, which was duly affirmed upon appeal. There is no question that both the New York and the Maryland courts were courts of general jurisdiction and competent to pass upon the questions presented to them if jurisdiction otherwise was obtained.

Soon after the commencement of the Maryland action and before judgment therein the association superseded its superintendent in that state by appointing in his place one having his office in another state and thereafter it had neither representative nor property of any value within the former jurisdiction, but at the time this controversy was submitted did have therein a few individual members.

After the rendition of the Maryland judgment in favor of Mrs. Ehrman's estate it was assigned to plaintiff. He, after the lapse of twelve years, sought to enforce it in this state with the resulting submission by agreement of this controversy, whereby is presented the question already outlined of superiority between the Maryland and New York judgments.

The Federal Constitution provides that full faith and credit shall be given in each state to the judicial proceedings of every other state. The meaning of this provision in the light of other provisions in the Constitution has been defined and limited by well-established principles prescribing certain conditions under which a judgment of one state must be rendered in order to secure the benefit and protection of this clause in another jurisdiction. Giving heed to these principles and passing consideration for the moment of the Statute of Limitations as a defense we shall find that the question whether the courts of this state should give recognition and effect to the judgment secured by plaintiff's assignor against defendant in the Maryland court will be determined by answer to the basic query whether the original action brought in New York by defendant was one *in rem*.

The Maryland court which rendered in favor of

plaintiff's assignor the judgment against defendant upon which this controversy is founded was a court of general jurisdiction with power to adjudicate such a cause of action as was then presented to it and it had jurisdiction of defendant by its personal appearance therein. Presumptively it had power to render a judgment defining the rights of the parties in respect of the certificates in controversy to which the courts of this state should give faith and credit as prescribed by the Constitution. But the Maryland court which rendered that judgment also was confronted with this same obligation imposed by the Federal Constitution. There was pleaded as a defense to the action pending in it the judgment recovered by the present defendant in the first New York action wherein the Maryland plaintiff was named as a defendant and wherein a judgment had been rendered adverse to her claims to the moneys payable under the certificates. It was the duty of the Maryland court to give the full faith and credit required by the Constitution to this judgment and if it was indeed a binding adjudication upon the rights of the parties the court was prohibited from considering anew the question whether the Maryland plaintiff was entitled to the moneys payable under the certificates. But as has been stated this obligation of the courts of one state to give faith and credit to a judgment rendered by the courts of another state is limited by certain principles defining the powers of the court rendering the first judgment. The fundamental and obvious limitation upon the power of the courts of one state to render a judgment binding upon those of another state is the one that the former shall have jurisdiction of the parties and of the subject-matter upon which they have pronounced an adjudication, and, as a necessary corollary to this, that the courts of the state in which the first judgment is pressed as a controlling adjudication shall have the right to investigate and ascertain whether the court rendering the judgment did have such jurisdiction.

(*Pennoyer* v. *Neff*, 95 U. S. 714; *Cole* v. *Cunningham*, 133 U. S. 107.)

In pursuance of this principle and of the right thus to examine, the Maryland courts inspecting the record of the New York judgment which was urged upon them as a controlling adjudication ascertained, as indeed is conceded at all points, that the only manner in which the New York court claimed to have obtained jurisdiction of the Maryland plaintiff was by service of the summons upon her by publication outside of the state of NewYork, she being a non-resident thereof. It is virtually admitted, as indeed it must be, that if the New York action was one *in rem* or one affecting specific personal property within the provisions of subdivision 5, section 438, Code of Civil Procedure, this manner of service was sufficient to give jurisdiction to determine the rights of all the claimants including the Maryland plaintiff; that if it was not such an action but was a personal action such service was void and gave the court no jurisdiction and entitled the subsequent judgment to no respect when pleaded. Therefore, as already stated, we come to the controlling inquiry whether the action brought by the present defendant as plaintiff in New York to determine conflicting claims to the moneys payable by it under its certificates was an action *in rem* or affecting specific personal property. It seems to us that it decisively lacked all of the fundamental characteristics of such an action, and for the purpose of applying to it the test we first examine its features.

The defendant under its certificates had incurred a personal liability to some one for given sums of money. That obligation constituted a personal claim against it. As a means of paying this claim it collected moneys by levying an assessment upon its members. The moneys thus collected, however, were not even kept in a separate fund but were deposited in a general account called the beneficiary fund wherefrom I apprehend all claims

of this character were paid. Least of all were the claims of the beneficiary, whoever he might be, transferred from the defendant as an obligor to the fund which had been collected by it merely as a means and for the purpose of discharging the obligation. The claim of the certificate holder remained a personal one and not a right in or lien upon specific property. The defendant fearing that it might be subjected to double or triple payment of one claim commenced its action in interpleader wherein it named all of the conflicting claimants as defendants. In that action it did not even supply the superficial appearance of an action *in rem* by bringing into court and depositing the moneys to which conflicting claims were being made. But even if it had this would not have changed in any manner the nature of the action. The requirement that the plaintiff in such an action shall so bring into court the moneys which are in dispute is a requirement imposed by a court of equity as a condition of relieving the debtor from further obligation for costs or otherwise while the conflicting claimants litigate the question which shall have judgment against it upon the claim admitted to be due. It was this litigation amongst conflicting claimants for which defendant as plaintiff in that action prayed in order that with safety and protection to itself a judgment might be finally rendered determining which one should be allowed to assert against it a claim for the moneys which it admitted to be due to somebody, and this was the judgment which was actually rendered. After providing for the payment of certain costs and expenses it was adjudged that the plaintiff in that action (the present defendant) " pay the balance of said moneys (those due upon and under the certificates issued by it) the amount thereof to be stated in said judgment to the said defendant, Emma L. Heritage, as executor." That was the ordinary judgment in an action in interpleader determining that the plaintiff pay the moneys conceded by it to be due upon a personal

claim to some one to the person found to be entitled thereto.

While perhaps it would be difficult to describe all the superficial features which might be possessed by different actions and proceedings *in rem* and *quasi in rem,* it seems perfectly obvious that the action which we have described did not have any of the substantial and indispensable characteristics of such an action as they have been defined again and again.

An action or proceeding *in rem* has for its subject specific property which is within the jurisdiction and control of the court to which application for relief is made. The action proceeds against such specific property and its object is to have the court define the rights therein of various and conflicting claimants. Jurisdictional control of the property affords the basis for service beyond its jurisdiction upon those who may be interested in its disposition. The result of such an action is a judgment which operates upon the property and which has no element of personal claim or personal liability. There is no authority so far as we are aware holding that an action of interpleader is one *in rem,* but exactly the opposite view has been entertained. (*N. Y. Life Ins. Co.* v. *Dunlevy,* 241 U. S. 518, 521, 522.)

A mere inspection of section 438 of the Code seems to make it so plain that the case was not one permitting service by publication under the provisions of that section on the ground that the action related to specific personal property, that we deem it unnecessary to discuss the proposition at length.

It, however, seems to be thought and argued that even though it should be determined now that the action pending in the New York court was not one *in rem* which permitted jurisdiction of a non-resident party to be secured by service by publication, still the decision of that court that it was such an action was a binding adjudication which could not be escaped by the Maryland

court. This of course is not so as to a fact necessary to confer jurisdiction. A court even of general powers cannot acquire jurisdiction merely by asserting it or determining that it exists. It cannot acquire jurisdiction of the person by asserting and finding his residence within the state when the undisputed facts conclusively show him to be a non-resident. And it cannot for the purpose of acquiring jurisdiction of a non-resident through service of the summons by publication assert and determine that the cause of action before it is of a character which permits jurisdiction by such service when the undisputed facts show conclusively that it is not such an one. The nature of the action in such a case is one of the jurisdictional facts and the court cannot determine in its favor the existence of jurisdiction when there is nothing to support such view. (*O'Donoghue* v. *Boies*, 159 N. Y. 87, 97–99; *Risley* v. *Phenix Bank of N. Y.*, 83 N. Y. 318, 337; *Pennoyer* v. *Neff*, 95 U. S. 714, 721; *Thompson* v. *Whitman*, 18 Wall. 457, 463, 469; *National Exch. Bank of Tiffin* v. *Wiley*, 195 U. S. 257; *Haddock* v. *Haddock*, 201 U. S. 562; *Reynolds* v. *Stockton*, 140 U. S. 254, 264, 265.)

Determining, therefore, that the original New York action was not an action *in rem* or one affecting specific personal property under section 438 of the Code, the conclusion necessarily follows that the Maryland court was right in holding that the New York court was without jurisdiction to render the judgment against its plaintiff which had been attempted; that the judgment so rendered was not an adjudication to which it was compelled to give faith and credit, and that it had jurisdiction to determine in the action then pending before it who was entitled to the moneys due on the certificates. It is immaterial whether we agree with its views that the plaintiff in that action rather than some other claimant was entitled to such moneys. It is well established that the conclusiveness of a judgment rendered by a court

which really has jurisdiction of the issues before it is not destroyed because it may take a different view than some other court would take of the law governing the controversy. (*Risley* v. *Phenix Bank of N. Y.*, 83 N. Y. 318, 337; *Manson* v. *Duncanson,* 166 U. S. 533; 1 Black on Judgments [2d ed.], sec. 261.)

But it is urged by the defendant that even though the Maryland judgment when recovered was an effective and binding adjudication upon which action might have been brought in this state, this right had been lost at the time this controversy was submitted by operation of the Statute of Limitations. And in support of this claim our attention is called to the Maryland statute which at the time the judgment in that state was rendered provided that under ordinary circumstances an action must be brought upon a judgment within twelve years, and it is correctly stated that our courts in this state will give effect to the Maryland statute, and that, therefore, since the period of twelve years prescribed in the latter state had expired when this proceeding was brought, it was barred.

We think that the plaintiff is able to and does make an effective answer under the Maryland statutes to this contention. It was provided by the Maryland statutes at the time the Maryland action was commenced and for many years at least thereafter, that action might be brought against a voluntary unincorporated company or association like defendant " by the name or title by which it is commonly known or by or under which its business is transacted," and the Maryland action was thus brought. While we have not a copy of the statutes bearing upon that subject it is stated without contradiction, and it is not too much to assume in analogy with our own laws, that an action in such form against an association could only be commenced by service upon an officer or agent appointed for that purpose. It was then further provided

22

in effect that the benefit of the limitation hereinbefore referred to should not apply to any one absenting himself from the state, and attention has already been called to the fact that before the Maryland judgment was rendered the defendant superseded its Maryland agent and representative by appointment of another one residing within another state and that it left no property of any consequence in the former state. Service, therefore, was impossible in the ordinary way. The defendant attempts to escape from the effect of this condition as nullifying the Statute of Limitations by asserting that during the time succeeding the rendition of the Maryland judgment it had five or six members residing in the state, but we think this answer is wholly ineffective. In the first place the only statement of fact in that connection is the one that at the time when the formal statement of facts in the present controversy was made there were six members of defendant residing in Maryland. A presumption does not flow backward from a given point but only forward. The fact that there were six members residing in Maryland in 1917 is no indication that they resided there during the seventeen years preceding that date. But even if we assume that they had so resided, such residence of individual members would not have helped the statute to run, as defendant desires. The plaintiff in the Maryland judgment having the right to proceed against the defendant as an association was not compelled in order to avoid the statute to attempt to sue all of its members as individuals. If it complied with the requirements of the statute in bringing an action against the defendant as an association it did enough to avoid the bar of the statute. On a construction of the statutes so far as they are presented to us in the light of the arguments made by the respective parties we do not think that the right of action on the Maryland judgment was barred by the twelve years' statute of that state and, if not, it comes within the twenty years' limitation of the

statutes of this state under which it is not claimed to have been barred.

In accordance with these views we think that the judgment of the Appellate Division should be reversed and judgment directed in favor of the plaintiff for the sum of $1,967.60 with interest from February 2, 1900, with costs in this court and the Appellate Division.

HOGAN, CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.